**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM CATO SELLS, ) | |
| ) | 3:06-CV-00023-LRH (VPC) |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| E.K. McDANIEL, ET AL., ) | |
| ) | |
| Defendants. ) | November 1, 2006 |
| ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for a temporary restraining order and preliminary injunction (#27). Defendants opposed (#31) and plaintiff replied (#36).

The court has thoroughly reviewed the record and the motion and recommends that plaintiff's request for a temporary restraining order and preliminary injunction (#27) be denied.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff William Cato Sells, a *pro se* prisoner, currently is incarcerated by the Nevada Department of Corrections ("NDOC") at the Ely State Prison ("ESP") and is classified as "High Risk Potential" ("HRP") (#27). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983 alleging that prison officials (1) violated his Fourteenth Amendment right to due process by classifying him as HRP for over eight years; (2) violated his Eighth Amendment right against Cruel and Unusual Punishment by their continued classification of plaintiff as HRP; and (3)

retaliated against him in violation of his First Amendment rights after he exercised his constitutional rights (#1).[1]

In June, 1998, plaintiff was accused of manufacturing, duplicating and distributing over three dozen keys that unlocked various doors at the Southern Desert Correctional Center ("SDDC") where plaintiff was incarcerated (#34, Ex. C). Additionally, in a cell search, the prison found an un-mailed letter to the plaintiff's mother discussing escape from SDDC and admitting that he had "access to keys to every lock in this institution." *Id.* Although the plaintiff now disputes his guilt, he pled guilty to disciplinary charges for possession and distribution of keys and received two 180-day terms in disciplinary segregation to be served consecutively. *Id.* On June 18, 1998, the plaintiff was transferred to ESP to serve his disciplinary segregation sentence. *Id.* The plaintiff was classified as HRP at that time because the prison found him to be an "escape risk." *Id.* Plaintiff has remained HRP ever since.

HRP is a custody level that is more restrictive than the Condemned Men's Unit ("CMU"), otherwise known as "Death Row" (#27, Exhibit-Defendant McDaniel's Responses to Plaintiff's First Set of Request for Admissions ("1st RFA responses"), No. 28; #36, Exhibit-Defendant McDaniel's Responses to Plaintiff's Second Set of Request for Admissions ("2nd RFA responses"), No. 23; #36, Exhibit-Defendant McDaniel's Responses to Plaintiff's First Set of Interrogatories ("1st ROG responses"), No. 9).[2] According to ESP Institutional Procedure 4.34,

---

[1] Plaintiff originally filed suit in the Seventh Judicial Court of Nevada on May 20, 2005 (#1). On January 13, 2006 defendants removed to federal court pursuant to 28 U.S.C. § 1441 (#2).

[2] HRP inmates are permitted one hour of exercise five days per week; are fed in their cells; may receive only one phone call per week; have restricted canteen purchases; may shower only three times per week, during which they are restrained; are restrained in wrist & leg restraints and have three officers escorting them with a restraint leash anytime they are removed from their cell; and may have visitors only two times per week behind glass (#36, 1st ROG responses, No. 8). In comparison, Death Row inmates are allowed daily exercise and daily tier time; may receive one phone call per day; have less restrictive canteen purchases; may shower daily on tier time; are unrestrained in the unit but fully restrained when they leave

2

titled "High Risk Potential Inmates," "the full classification committee **should** review H.R.P. inmates semi-annually or at the request of a member of the full classification committee to determine if the H.R.P. designation should be removed." (#31, Ex. D, p.2). If the full committee recommends that the inmate be removed from HRP, the recommendation is forwarded to the Warden, who then has sole discretion to decide whether a prisoner should be re-classified. *Id*.; *see also* #27, 1st RFA responses, No. 18; #36, 1st ROG responses, No. 12.

Plaintiff alleges that when he arrived at ESP, he was informed that he would remain as HRP for ninety days for evaluation (#27, pp. 6-7). Plaintiff further alleges that in December 1998, Mark Drain, a member of the classification committee, requested the plaintiff's HRP classification be removed (#1, ¶19). In March 1999, the plaintiff allegedly finished the disciplinary sentence that he had received at SDCC without any disciplinary violations, and was told that a reply regarding his classification status was due from Warden McDaniel (#1, ¶¶ 20-21; #27, p.7). Allegedly, a reply never materialized. *Id*. Plaintiff further alleges that he did not receive a hearing before the classification committee regarding removal of HRP classification until October 2002, more than four years after he arrived at ESP (#27, p.7). Plaintiff contends that at the October 2002 hearing he was informed by the Warden McDaniel that his classification as HRP would "never" be removed. *Id*. Plaintiff alleges that he received another hearing before the classification committee in October 2004 and was informed at that time that all members of the committee had recommended that his HRP classification be removed (#1, ¶¶ 33-34). However, plaintiff alleges, a kite he submitted to Warden McDaniel in January 2005 was returned

---

the unit; and are permitted contact visits (#36, 1st ROG responses, No. 9). General population inmates are permitted daily access to the main yard & tier; are fed in the culinary; are allowed one call per day; are allowed to hold a prison job; have access to the gym and the chapel; are permitted daily showers; are not escorted in restraints; and are permitted visits three days per week and may be specially approved for contact visits (#36, 1st ROG responses, No. 8).

by the Warden stating that the Warden "was the only one who decides who should be placed on, or removed from HRP Segregation," and failed to address the plaintiff's request for a final decision regarding removal from HRP (#1, ¶ 35).

Plaintiff filed this lawsuit in May 2005. On June 12, 2006, plaintiff filed a motion for a temporary restraining order and preliminary injunction seeking "immediate removal from High Risk Potential (HRP) Segregation and restoration to Medium, or Minimum custody Institution, or facility" (#27).

The Court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A. Discussion**

**1. Preliminary Injunction**

The Prison Litigation Reform Act ("PLRA") states that

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief...

18 U.S.C. § 3626(2).

The traditional equitable criteria for granting a preliminary injunction in the Ninth Circuit are: "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable

4

injury to the plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995); *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003).  Alternatively, the moving party may demonstrate *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions going to the merits were raised and the balance of hardships tips sharply in his or her favor. *Johnson*, 72 F.3d at 1430 (emphasis added); *see also Earth Island Institute v. U.S. Forest Service*, 351 F.3d 1291, 1298 (9th Cir. 2003).  The Ninth Circuit has stated that these alternatives represent "extremes of a single continuum" rather than two separate tests and thus, the "greater the relative hardship to [the party seeking the preliminary injunction,] the less probability of success must be shown." *Clear Channel*, 340 F.3d at 813.

Preliminary injunctive relief is designed to preserve the status quo until the court has an opportunity to hear the lawsuit on its merits. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006).  The "granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 325 F.2d 141, 143 (9th Cir. 1964).

**2. Fourteenth Amendment Liberty Interest and Right to Due Process**

The procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally-protected liberty interest is at stake. *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993), *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972).  Liberty interests can arise both under the Constitution and from state law. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974).  The Supreme Court has held that the Constitution

5

itself does not confer a liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005), *citing Meachum v. Fano*, 427 U.S. 215, 225 (1976).

However, a prisoner's liberty interest in his or her conditions of confinement may be found based on state policies or regulations. *Wilkinson*, 545 U.S. at 222. The Supreme Court has stated that such an interest

> [w]ill be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force... impose[s] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). There is no single standard to determine whether a prisoner's condition is an atypical and significant hardship and the "condition or combination of conditions or factors... requires case by case, fact by fact consideration." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003), *citing Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). The guidance provided by *Sandin* is helpful:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861, *citing Sandin*, 515 U.S. at 486-87 and *Keenan*, 83 F.3d at 1089.

In *Wilkinson*, the Court held that prisoners had a liberty interest in remaining free from Ohio's "supermax" facility because the conditions of confinement in the supermax facility constituted an atypical and significant hardship in relation to the ordinary incidents of prison life. *Wilkinson*, 545 U.S. at 224. The Court noted a number of restrictive conditions in the supermax facility – the prisoners were confined to their cells for twenty-three hours per day

6

1  and were fed there, the light was on twenty-four hours per day, and exercise occurred for only
2  one hour per day in an indoor room.  *Id*.  The Court found that these conditions combined
3  with two additional significant conditions created a liberty interest: the first was duration – a
4  classification in the supermax facility was indefinite, unlike the 30-day placement in *Sandin* –
5  
6  and the second was that the classification disqualified an otherwise eligible prisoner for parole
7  consideration.  *Id*.
8        Finally, "[i]f the hardship is sufficiently significant, then the court must determine
9  whether the procedures used to deprive that liberty satisfied Due Process."  *Ramirez v.*
10 *Galaza*, 334 F.3d 850 (9th Cir. 2003), *citing Sandin*, 515 U.S. at 484.
11 
12       **3. Eighth Amendment Right Against Cruel and Unusual Punishment**
13       The Eighth Amendment prohibits the imposition of cruel and unusual punishments
14 and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and
15 decency."  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations
16 omitted).  An inmate may challenge the conditions of his confinement as a violation of his
17 Eighth Amendment right to be free from cruel and unusual punishment if he satisfies
18 
19 objective and subjective standards.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  The
20 objective standard requires prison officials to provide inmates with adequate shelter, food,
21 clothing, sanitation, medical care, and personal safety.  *Id*.  A claim may arise if the conditions
22 of confinement cause a sufficiently serious deprivation.  *Id*.  The court must evaluate the
23 circumstances, nature and duration of the deprivation to determine whether it is inhumane or
24 
25 so egregious that it could result in significant injury or unnecessary and wanton infliction of
26 pain.  *Id*.; *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002); *Somers v. Thurman*, 109 F.3d
27 614, 623 (9th Cir. 1997).
28

The subjective standard requires a showing that prison officials were deliberately indifferent to the inmate's safety. *Johnson*, 217 F.3d at 731. Prison officials must be aware of the facts that present a substantial risk of harm to the inmate, and recognize that the situation poses a substantial risk of harm. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002). Mere negligence does not prove deliberate indifference. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). An inmate also must show that he sustained damages as a result of the prison official's deliberate indifference. *Id*.

### 4. First Amendment Retaliation

Prisoners have a right to meaningful access to the courts, and prison authorities may not penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials may be sued under Section 1983 for retaliating against a prisoner for exercising his or her constitutional rights. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1313 (9th Cir. 1989). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 213 F.3d 443, 449 (9th Cir. 2000), and *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curium). Such claims must be evaluated in light of the deference accorded to prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1997). The inmate bears the burden of pleading and proving the absence of legitimate correctional goals for the alleged retaliatory action. *Id*. at 806.

///

///

**B. Analysis**

Plaintiff contends that the defendants have given conflicting justifications for keeping him classified as HRP, including that he is a serious escape risk, that he possesses knowledge of locks, locking devices and the ability to defeat them, and that he has failed to remain disciplinary-free for over a year (#27, pp.5, 7). Plaintiff argues that he was never informed that pleading guilty to the charges in 1998 would expose him to being transferred to ESP where he would be placed in "indefinite" HRP segregation (#27, pp.2, 6). Further, plaintiff alleges that he did not receive his first hearing before the HRP classification committee until October 2002, more than four years after he was given the classification (#27, p.7). Additionally, plaintiff alleges that Warden McDaniel has told him on different occasions either that he will "never" be removed from HRP segregation or that he would only be removed "by court order." (#27, pp.3, 7, 8-9). Plaintiff further contends that the disciplinary charges that he has incurred over the years have been manufactured by the defendants to keep him classified as HRP in retaliation for speaking out (#27, pp. 2-3, 8). Finally, plaintiff contends that he has been denied parole due to his HRP status, and was informed by a Parole Board member that the Board does not release HRP offenders (#27, p. 8).

Defendants allege that the plaintiff has always had "an unhealthy fixation with keys," and cite to a 1994 Nevada pre-sentencing report that contained a statement allegedly made by plaintiff's mother to Oregon officials regarding plaintiff's apparent life-long fascination with keys and locks (#31; #32, Exhibit B).[3] *Id.* Further, the defendants allege that plaintiff has an

---

[3] The Nevada pre-sentencing report stated "[i]n Oregon Department of Correction records, the defendant's mother indicates that her son had behavior problems throughout his childhood. She stated 'As a baby, Willie's first word was key. He developed an unhealthy fixation for keys that grew worse with the passage of time. He had an unbelievable collection of keys hidden in his room and any other place he might find to hide them'" (#32, Exhibit B).

9

in-depth knowledge of keys and locks and has escaped from two prisons in California and Oregon (#31).[4]  The defendants also state that the plaintiff has "approximately thirty (30) notices of disciplinary charges at SDCC and ESP, a significant number of which relate to possessing or manufacturing keys, possessing contraband related to keys or otherwise attempting to tamper with locks at the prison." *Id*.  Defendants note (and plaintiff admits) that plaintiff sent a bent paperclip to Judge Papez in Nevada's Seventh Judicial District Court in 2003, which defendants allege was in the shape of a homemade handcuff key.  *Id*.  Defendants state that they have told plaintiff that in order to be considered for removal from HRP, he must remain without disciplinary action for a period of one year, but that plaintiff has "never been able to meet that requirement."  *Id*.  The defendants argue that plaintiff cannot demonstrate a probability of success on the merits for any of his claims because he has no protected due process interest in his classification and status at ESP, administrative segregation does not violate the Eighth Amendment, and plaintiff has not presented evidence to show the defendants' actions were retaliatory.  *Id*.

**1. Likelihood of Success on the Merits**

To obtain a preliminary injunction, plaintiff must offer evidence that there is a likelihood he will succeed on the merits of his claim.  *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995).  "Likelihood of success on the merits" has been described as a "reasonable probability" of success.  *King v. Saddleback Junior College Dist.*, 425 F.2d 426, 428-29 n.2 (9th Cir. 1970).

///

---

[4] The defendants submit no evidence showing that the plaintiff escaped from other prisons, although plaintiff admits in his reply that he "walked away" from two unsecured prisons without the use of keys, once in 1979 and once in 1986 (#36, affidavit of Sells, ¶¶ 5 – 9).

**a. Fourteenth Amendment**

As noted above, the procedural guarantees of the Fourteenth Amendment's Due Process Clause apply only when a constitutionally-protected liberty interest is at stake. *Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993). Although the Constitution confers no liberty interest in avoiding transfer to more adverse conditions of confinement, *see Meachum v. Fano*, 427 U.S. 215, 225 (1976), an inmate possesses a state-created liberty interest when his confinement "imposes an atypical and significant hardship... in relation to the ordinary incidents of prisoner life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The following factors are used to determine whether a restraint is an atypical and significant hardship on the inmate:

> (1) whether the challenged condition "mirrored those conditions imposed upon inmates in administrative segregation and protective custody"; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will inevitably affect the duration of the prisoner's sentence.

*Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003).[5] Concerning the first factor, this Court has before it only the HRP classification procedure, *see* #31, Ex. D, and interrogatory responses regarding death row and general population restrictions (#36, 1st ROG responses, Nos. 8 & 9). In *Wilkinson*, the Supreme Court found that Ohio's supermax facility was "more restrictive than any other form of incarceration in Ohio, including conditions on its death row or in its administrative control units," and as such, a liberty interest existed. *Wilkinson*, 545 U.S. at 214. The Court does not have before it information regarding the conditions of confinement imposed upon inmates in other ESP disciplinary regimes, such as disciplinary

---

[5] Defendants argue that because I.P. 4.34 states "this procedure does not and is not intended to create any liberty interest on behalf of or in favor of any inmate or other person," that plaintiff has no liberty interest (#31, p. 5). However, the Court notes that the test for finding a liberty interest is *Sandin*, not whether the prison has inserted boilerplate language into one of its regulations.

11

segregation, administrative segregation and protective custody.[6]  Due to the lack of evidence before the Court regarding other disciplinary schemes at ESP, the Court cannot conclude that the first factor is met.

Concerning the second factor, the Court in *Sandin* found that a thirty-day sentence in disciplinary segregation "did not work a major disruption" in the prisoner's environment. *Sandin*, 515 U.S. at 486.  Conversely, the Ninth Circuit has found that two years in disciplinary segregation was "most significant" and stated that "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (citations omitted).  Finally, in *Wilkinson*, the Court found that the indefinite term in the Ohio supermax facility, which was reviewed after thirty (30) days and thereafter only annually, was significant to finding a liberty interest. *Wilkinson*, 545 U.S. at 224.  Here, plaintiff has been indefinitely segregated as HRP under what defendants admit are extremely restrictive conditions for ***over eight years***.  This is quite obviously considerably longer than the thirty days found acceptable in *Sandin* or even two years found unacceptable in *Ramirez*.[7]  The classification clearly works a major disruption in plaintiff's life in prison based on the extreme restrictions involved.  Further, the defendants admit that plaintiff can be re-classified only at the Warden's sole discretion.[8]

---

[6] Plaintiff refers to classifications such as "disciplinary detention (DD), disciplinary segregation (DS), HRP segregation, administrative segregation (AD/SEG) and protective custody (PC)" in his first RFA, *see* #27, 1st RFA, No. 84, however, does not explain what each category is or how the restrictions in each category might differ from HRP.

[7] Although plaintiff presents no evidence of such, he alleges that he failed to receive a hearing regarding his HRP status until 2002, more than four years after he was classified HRP.  The Court notes that the defendants have presented many documents in Exhibit C, some of which appear to be classification committee results from 1999 and 2002 and some of which appear to indicate that plaintiff may have refused to attend some of the classification committee hearings.  *See* #36, Ex. C.

[8] The Ohio procedure approved by the Court in *Wilkinson* differs in a significant way from the Nevada procedure.  Similar to Nevada, the Ohio procedure provided that an inmate's classification removal

1    Defendants argue that plaintiff has been told that he will be re-classified from HRP
2    once he is able to remain disciplinary-free for a year, and attach plaintiff's lengthy disciplinary
3    record, arguing that he has been unable to meet this requirement since 1998 (#31, Ex. C).
4    However, the Court notes that defendants' own evidence shows that plaintiff appears to have
5    been disciplinary-free for the period of time between June 18, 2004 and February 17, 2006.
6    *Id*. The Court concludes that the second factor is met based on the length of confinement as
7    HRP and the high degree of restraint involved.
8    
9    Finally, the third *Sandin* factor concerns whether the prison's action will affect the
10   duration of the prisoner's sentence. Here, plaintiff alleges that he has specifically been denied
11   parole because of his HRP classification and that a Nevada Parole Board member told him
12   that the Board does not grant parole to inmates classified as HRP (#27, p. 8). The defendants
13   assert that plaintiff's HRP status will not affect his possibility of parole because "there is
14   nothing in the Nevada statutes which would prevent the Parole Board from considering
15   Plaintiff for parole simply because he has HRP status" (#31, p.6). *Wilkinson* held that the fact
16   that prisoners were denied opportunity for parole because of their indefinite status in the
17   supermax facility was significant; however, in that case, the Ohio regulations mandated the
18   parole denial. *Wilkinson*, 545 U.S. at 224. Here, all that is before the Court is plaintiff's
19   affidavit stating he was told his HRP classification would affect his possibility of parole.

---

was first heard by a committee who would make a recommendation to the Warden. *Wilkinson*, 545 U.S. at 217. However, in Ohio, the Warden then made his or her own recommendation and forwarded it to the "Bureau of Classification," which was a group of prison officials vested with final decision-making authority over inmate classifications. *Id*. Significantly, in Nevada, one person, the Warden, has **sole discretion** regarding whether to remove an inmate's HRP classification (#31, Ex. D, p.2). Further, while the defendants infer on page 2 of their opposition that the Classification Committee meets every six months, I.P. 4.34 requires only that the "full classification committee ***should*** review H.R.P. inmates semi-annually or at the request of a member of the full classification committee" (#31, Ex D., p.2). This provision is even more troubling to the Court because it does not mandate review of the HRP classification, thereby potentially allowing inmates to remain indefinitely classified as HRP.

Neither defendants nor plaintiff has provided affidavits from anyone on the Parole Board to support their position. Without more, the Court cannot say that the third *Sandin* factor was met.

Based on the evidence before the Court, the Court cannot conclude at this time that the plaintiff has a liberty interest in remaining free from HRP status, and therefore, cannot conclude that the plaintiff is "likely" to prevail on the merits of his Fourteenth Amendment claim.

**b. Eighth Amendment**

Plaintiff alleges that being classified as HRP for eight years has caused him "extreme emotional and mental anxiety" (#1, ¶41). Defendants counter that the mere fact that plaintiff has been housed in "administrative segregation with HRP status for an extended period of time" does not rise to the level of an Eighth Amendment violation (#31, p.7).

Plaintiff's claim that the conditions of his confinement are cruel and unusual must first satisfy an objective test, that the injuries resulting from his conditions of confinement are sufficiently serious. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Although the Ninth Circuit has held that mental injury suffices for Eighth Amendment cases, *see Jordan v. Gardner*, 986 F.2d 1521, 1526 (9th Cir. 1993) (en banc) and *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), the plaintiff does not substantiate his alleged emotional and mental injuries or their severity with evidence other than his brief allegation in the complaint. Therefore, plaintiff's unsupported emotional injuries fall short of the objective standard requiring a sufficiently serious deprivation.

Plaintiff also fails to satisfy the subjective standard that defendants acted with deliberate indifference to a substantial risk of serious harm to him. *Johnson*, 217 F.3d at 731.

There is no evidence that defendants ignored or failed to respond to plaintiff's medical needs, or that plaintiff suffered damages from any deliberate indifference. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds in WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Therefore, the court cannot conclude that it is likely that the plaintiff will be successful on the merits of his Eighth Amendment claim.

### c. First Amendment

Plaintiff alleges that defendants have retaliated against him for exercising his constitutional rights by continuing to hold him as HRP and by fabricating disciplinary charges, adjudications and sanctions for the purpose of keeping him as HRP (#1, ¶¶ 8, 40-43). Defendants argue that plaintiff fails to sufficiently allege a retaliation claim in his complaint (#31). A retaliation claim involves five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 213 F.3d 443, 449 (9th Cir. 2000).

Here, the plaintiff fails to make sufficient allegations to support his claim of retaliation. Although plaintiff alleges that defendants have manufactured charges against him, he includes nothing to support this allegation other than his apparent belief it is true. Further, plaintiff has not alleged that any action that the defendants have taken have chilled his speech; indeed, the plaintiff has filed a number of prison grievances, a habeas case, and the current federal civil case. As such, the court cannot conclude that it is likely that the plaintiff will be successful on the merits of his First Amendment retaliation claim.

///

**2. Irreparable Injury**

Defendants argue that the fact that plaintiff delayed filing his motion for a preliminary injunction "for eight years" and for over a year after he filed his complaint is an indication that there is no need for "speedy action" by the Court (#31). To obtain a preliminary injunction, plaintiff must offer evidence that he will be irreparably injured without the injunction. *Johnson v. California State Bd. Of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995). "Courts generally do look at the immediacy of the threatened injury in determining whether to grant preliminary injunctions." *Privitera v. California Bd. Of Medical Quality Assurance*, 926 F.2d 890, 897 (9th Cir. 1991) *citing Caribbean Marine*, 844 F.2d at 674 ("a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief").

As noted above, plaintiff has not alleged any specific injury other than emotional and mental distress resulting from his continued HRP status. Since plaintiff has been classified as HRP for eight years, there does not appear to be anything "imminent" or "immediate" that will injure him. The Court concludes that the plaintiff will not suffer irreparable injury.

**3. Balance of Hardships and the Public Interest**

Because the Court found that plaintiff failed to demonstrate a likelihood of success on the merits and irreparable injury, the Court has not addressed the balance of hardships or public interest elements.

**4. Alternative Test**

The Ninth Circuit has held that as an alternative to the four traditional equitable criteria for relief through preliminary injunction, plaintiff may prove <u>either</u> (1) a likelihood of success on the merits and the possibility of irreparable injury, <u>or</u> (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in his favor.

16

*Southwest Voter Registration Educ. Project*, 344 F.3d at 917 (emphasis added). Above the Court concluded that plaintiff has not shown that he can meet the first alternative test – a likelihood of success on the merits and irreparable injury.

Regarding the second alternative test, although the Court concluded that questions have arisen regarding plaintiff's due process claim, he has not raised serious questions as to his First and Eighth Amendment claims. Further, despite raising due process questions, the balance of hardships do not tip "sharply" in plaintiff's favor. Although the Court is aware that HRP status is very restrictive and that plaintiff has been confined under these conditions for a very long period of time, the prison also has an interest in preventing inmate escapes. Thus, plaintiff has not met the second alternative test.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that the plaintiff has not demonstrated a likelihood of success on the merits for any of his claims, has failed to show irreparable injury, and the balance of hardship do not tip sharply in his favor. As such, the court recommends that plaintiff's motion for a temporary restraining order and preliminary injunction (#27) be DENIED.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)© and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for a temporary restraining order and preliminary injunction (#27) be **DENIED**.

**DATED:** October 30, 2006.

_____
**UNITED STATES MAGISTRATE JUDGE**

18