UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

WILLIAM CATO SELLS,

          Plaintiff,

v.

E.K. McDANIEL, et al.,

          Defendants.

3:06-CV-00023-LRH-VPC

O R D E R

Before the court is the Report and Recommendation of U.S. Magistrate Judge Valerie P. Cooke (#141[1]) entered on August 20, 2008, recommending granting in part and denying in part Defendants' February 29, 2008, motion for summary judgment (#114). Defendants filed objections to the magistrate report and recommendation on October 27, 2008 (#150); and Plaintiff filed his response to Defendants' objections on November 7, 2008 (#151), pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 1B 3-2 of the Rules of Practice of the United States District Court for the District of Nevada.

The court has conducted its de novo review in this case, including the objections of the Defendants, the pleadings and memoranda of the parties, and other relevant matters of record pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule IB 3-2. The court determines that the

---

[1] Refers to court's docket number

magistrate's report and recommendation should be adopted in its entirety with the exception of the magistrate's recommendation to deny qualified immunity to Defendants E.K. McDaniel and Jackie Crawford.

In the report and recommendation, the magistrate denied qualified immunity to Defendants on the basis that they "make no specific argument with respect to plaintiff's due process claim such as whether the law was clearly established or why they reasonably believe that their conduct is lawful." (Report and Recommendation (#141) at 23:1-3.) Thus, the magistrate concluded, "defendants have failed their burden of putting forth facts and evidence to demonstrate the absence of any genuine issues of material dispute." (*Id.* at 23:3-5.) While Defendants' advocacy certainly left much to be desired with regard to whether they are entitled to qualified immunity, the court exercises its duty to decide questions of law by finding that Defendants are entitled to qualified immunity. *Cf. Sonoda v. Cabrera*, 255 F.3d 1035, 1040 & n.2 (9th Cir. 2001) (reviewing whether qualified immunity was correctly granted even though the issue was raised only in the defendants' answer); *see also Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009) (noting the importance of resolving immunity questions at the earliest possible stage in litigation).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 129 S.Ct. at 815 (internal quotation marks omitted). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted).

"Although earlier cases involving 'fundamentally similar' facts can provide especially

2

strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* at 741.  Accordingly, qualified immunity will be denied if a case involves "the mere application of settled law to a new factual permutation." *Porter v. Bowen*, 496 F.3d 1009, 1026 (9th Cir. 2007).  However, even if the violated right was clearly established, it may be difficult for a officer to fully appreciate how the legal constraints apply to the specific situation he or she faces. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005) (en banc).  "Under such a circumstance, if the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense." *Id.* (brackets and internal quotation marks omitted).  In essence, "[o]fficers are entitled to qualified immunity unless they have been given fair notice that their conduct was unreasonable in light of the specific context of the case." *Winterrowd v. Nelson*, 480 F.3d 1181, 1186 (9th Cir. 2007) (internal quotation marks omitted).

Prior to *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Supreme Court mandated a two-step framework for deciding the issue of qualified immunity.  First, courts were to decide whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the court answered this question affirmatively, the court would then ask whether the constitutional right was clearly established. *Id.*  In *Pearson*, the Supreme Court reconsidered the two-step framework and held that courts are not required to address whether there was a constitutional violation before deciding whether the constitutional right at issue was clearly established. *Id.* at 818.  However, the Supreme Court also stated that courts may continue to follow the two-step framework as a matter of discretion. *Id.*

In the present case, the magistrate found that, viewing the evidence in the light most favorable to Sells, Defendants had in fact violated the Due Process Clause of the Fourteenth Amendment by failing to afford Sells certain procedures when classifying and maintaining him as High Risk Potential (HRP) status.  The court agrees with the magistrate's assessment and analysis.

3

Turning now to the question of qualified immunity, the court decides whether, viewing the evidence in the light most favorable to Sells, the constitutional right at issue was clearly established at the time of its alleged violation. This inquiry must be taken in light of the specific facts of the case, not as a general proposition. *Saucier*, 533 U.S. at 201.

The court concludes that, viewing the evidence in the light most favorable to Sells, his constitutional right to the procedures specified in the magistrate's opinion was not clearly established at the time of the alleged constitutional violation. Before finding that Sells was not afforded constitutionally adequate procedures, the magistrate was first required to determine that Sells has a constitutionally protected liberty interest in avoiding HRP status. *See Wilkinson*, 545 U.S. at 221 ("We need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest . . . ."). In concluding that Sells did in fact have a constitutionally protected liberty interest, the magistrate relied upon the three guideposts established by *Sandin v. Conner*, 515 U.S. 472 (1995) as synthesized by the Ninth Circuit's decision in *Ramirez v. Galaza*: "1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks omitted). The magistrate concluded that the weight of these factors compelled a finding that Sells has a liberty in interest in avoiding HRP status given (1) the extremely restrictive conditions of HRP status, (2) the fact that Sells has been classified as HRP status for over ten years, and (3) there was evidence that the parole board did not grant parole to inmates on HRP status.

The court agrees with the magistrate's conclusion that, viewing the evidence in the light most favorable to Sells, he has a liberty interest in avoiding HRP status; however, the court also finds that his liberty interest was not clearly established at the time of the alleged constitutional

violation. First, although HRP conditions are extremely restrictive, they differ from administrative segregation in only a few significant respects, including visitation rights and an HRP inmate's separation from other inmates. Second, the magistrate's report and recommendation is apparently the first time a court has found a constitutionally protected liberty interest in avoiding Nevada's HRP status.[2] Third, and most important, the inquiry into whether an inmate has a state-created liberty interest is fact intensive and requires case-by-case consideration.[3] Given the unpredictable nature of the multi-factor analysis mandated by *Sandin*, the court cannot find that Sells' liberty interest in avoiding HRP status was clearly established at the time of the alleged constitutional violation. Defendants are entitled to qualified immunity on this ground alone.

After finding Sells has a constitutionally protected liberty interest, the magistrate considered the process Sells was due before being placed on HRP status. In finding that Defendants' procedures violated due process, the magistrate relied primarily on the Supreme Court's decision in *Wilkinson v. Austin*, 545 U.S. 209 (2005). In *Wilkinson*, the Court upheld as consistent with due process the procedures Ohio prison officials employed when placing inmates in its "Supermax" prison facility. Before placing inmates in the Supermax facility and each year following placement, prison officials carried out the following process: First, a prison official would complete a "Long Form" that detailed matters such as the inmate's recent violence, escape attempts, gang affiliation, underlying offense, and other pertinent details. *Id.* at 216. A three-member committee would then meet to review the proposed classification and hold a hearing. *Id.* At least 48 hours before the

---

[2] Although Sells is correct that the issue of whether an inmate has a liberty interest in avoiding HRP status was raised in *Leonard v. McDaniel*, 3:06-CV-00559-RLH-RAM (D. Nev. 2008), the court did not decide that issue because it was not disputed by the defendants. *See* Report and Recommendation of the U.S. Magistrate Judge (#55) at 14. Moreover, the report and recommendation in *Leonard* was not accepted by the court until September 4, 2008, some two weeks after the report and recommendation in this case was filed.

[3] "There is no single standard for determining whether a prison hardship is atypical and significant, and the condition or combination of conditions or factors . . . requires case by case, fact by fact consideration." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (internal quotation marks omitted).

hearing, the inmate was provided with written notice summarizing the conduct or offense triggering the review; the inmate also had access to the Long Form. *Id.* The inmate was permitted to attend the committee's hearing, offer any pertinent information, and submit a written statement. *Id.*

If the committee did not recommend Supermax placement, the process terminated. *Id.* If the committee did recommend placement, it documented the decision in a report setting forth the nature of the threat the inmate presented and the committee's reasons for the recommendation as well as a summary of any information presented at the hearing. *Id.* at 216-17. The committee then sent the report to the warden of the prison where the inmate was housed. *Id.* at 217. If the warden disagreed that Supermax placement was appropriate, the process terminated and the inmate was not placed in the Supermax facility. *Id.* If the warden agreed with the report, he indicated his approval on the report, provided reasons, and forwarded the report to a bureau for a final decision. *Id.* The annotated report was served on the inmate, notifying him of the committee's and warden's recommendation and rationale. *Id.* The inmate then had 15 days to file any objections with the bureau. *Id.*

After the 15 day period had elapsed, the bureau reviewed the report and made a final determination whether the inmate would be placed in the Supermax facility. *Id.* If it deemed placement inappropriate, the process terminated. *Id.* If the bureau approved placement, the inmate was transferred to the Supermax facility, and the bureau's notes and rationale for the decision were provided to the inmate. *Id.*

The Supreme Court held that these procedures comported with due process and further stated the only process due to inmates placed in the Supermax facility was the "the informal, nonadversary procedures set forth in [*Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1 (1979) and *Hewitt v. Helms*, 459 U.S. 460 (1983)][4] . . . ." *Id.* at 228-29.

---

[4]In *Greenholtz*, the Supreme Court held due process was met when inmates denied parole were (1) permitted to appear before the parole board, (2) allowed to present letters and statements on their own behalf,

However, in dicta, the Court also compared Ohio's constitutionally adequate procedures to procedures Ohio formerly employed before placing an inmate in the Supermax facility. The Court noted that under Ohio's current procedures "[a]lthough a subsequent reviewer may overturn an affirmative recommendation for OSP placement, the reverse is not true; if one reviewer declines to recommend OSP placement, the process terminates. This avoids one of the problems apparently present under the Old Policy, where, even if two levels of reviewers recommended against placement, a later reviewer could overturn their recommendation without explanation." *Id.* at 226. It is the Court's reference to "problems apparently present under the Old Policy" that the magistrate relied upon to find a due process violation in Sells' case. Specifically, the magistrate stated that Defendants' current policy "allows a sole individual to make an undocumented decision rejecting a full committee's unanimous written recommendation to remove an inmate from HRP status. This is the exact evil the *Wilkinson* Court implicitly rejected." (Report and Recommendation (#141) at 19:3-6.)

The court agrees with the magistrate's conclusion that, viewing the facts in the light most favorable to Sells, Defendants failed to provide Sells with due process; however, the court also finds that a reasonable officer at the time could have thought otherwise. As an initial matter, *Wilkinson* was not decided until June 13, 2005; thus a reasonable officer could not have been on notice of *Wilkinson*'s dictum prior to that date. Moreover, while the *Wilkinson* Court approved the elaborate procedures employed by Ohio's prison system, the Court also stated that the simpler procedures employed in *Greenholtz* and *Hewitt* were constitutionally adequate. Defendants' practices were not so far afield from the procedures approved in *Greenholtz* and *Hewitt* that

---

and (3) informed in what respect they fell short of qualifying for parole. 442 U.S. at 15, 16. In *Hewitt*, the Supreme Court considered the process due to an inmate before being placed in administrative segregation. The Court held that an inmate must "merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476.

Defendants unreasonably applied the law set forth in those decisions.  Finally, while the *Wilkinson* Court did disapprove of Ohio's former procedures, this disapproval was, of course, not the Supreme Court's holding.  Thus, given the state of the law when Sells was classified and maintained as HRP status, Defendants were not on fair notice of the unconstitutionality of their alleged actions.  Defendants are therefore entitled to qualified immunity.

## CONCLUSION

Although Defendants are immune from Sells' claims for monetary relief, qualified immunity does not defeat Sells' claims for injunctive relief.  Therefore, in the event this case is not resolved through settlement, the court will hear this case on a bench trial following the parties' submission of a proposed pretrial order.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#114) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the Magistrate Judge's Report and Recommendation (#141) entered on August 20, 2008, is adopted and accepted with the exception of the magistrate's denial of qualified immunity to Defendants.

IT IS FURTHER ORDERED that this case is referred to the Honorable Valerie P. Cooke for the purpose of conducting a settlement conference.

IT IS FURTHER ORDERED that if settlement is unsuccessful, the parties shall lodge their proposed joint pretrial order within 20 days of the settlement conference.

IT IS SO ORDERED.

DATED this 24th day of March, 2009.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE